UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,                                              Case No. 3:18cr168

            Plaintiff,

  v.                                                                                    ORDER

Anthony Robinson,

            Defendant.

On June 14, 2018, Magistrate Judge James R. Knepp II conducted a detention hearing at the behest of Defendant. After reviewing proposed conditions of release and hearing the arguments of counsel, Judge Knepp denied Mr. Robinson relief, finding the law called for a presumption of detention under the Controlled Substances Act and that the conditions as proposed by Mr. Robinson were insufficient to overcome that presumption. Accordingly, he was detained. (Doc. No. 31).

About two years later, Mr. Robinson filed a motion for review of Judge Knepp's order of detention, (Doc. No. 68), objecting to Judge Knepp's decision, and arguing a change of circumstances – specifically the threat posed to Mr. Robinson due to his detention during the COVID-19 pandemic. The government objects to Mr. Robinson's release and moves for his continued detention.

I treat the motion as a request for release and objection due to Judge Knepp's earlier adverse determination, pursuant to Rule 59 of the Federal Rules of Criminal Procedure, as well as a request for release based upon changed circumstances due to the COVID-19 threat. On August 14, 2020, I

conducted a hearing on Mr. Robinson's request for relief. Counsel for both the government and Defendant proffered evidence and presented argument. Among the arguments offered by Mr. Robinson in support of release was his higher risk of COVID-19 infection due to a comorbidity, specifically asthma. Mr. Robinson's counsel related an incident during Mr. Robinson's current local incarceration in which he "passed out" while exercising. Because of my concern about this incident, I ordered the United States Marshals Service or his current jailer to provide me and counsel with his medical records. (Doc. No. 70).

In reaching my decision here, I have reviewed the transcript of the original hearing before Judge Knepp, the conditions proposed by the Defendant, reports from Pretrial Services detailing Mr. Robinson's history and the nature of the charges, the medical records provided, and the arguments of counsel.

First, as correctly stated by counsel, my review of the Magistrate Judge's decision is de novo. As stated above, in addition to general and appropriate arguments for his release, Mr. Robinson also focuses on his reported medical diagnosis of asthma in support of his release due to the higher risk to his safety should he contract COVID-19. Mr. Robinson attaches medical information and makes argument about the heightened danger of those with compromised respiratory systems contracting COVID-19. I will address those concerns first.

While I am certainly sympathetic to Mr. Robinson's concerns about his health during this pandemic, nothing he argues presents a sufficient change in circumstances to warrant release. While it is true there have been some cases of COVID-19 at both local custody facilities, it would appear that both jailers have taken significant steps to arrest the spread of the infection. I receive regular updates from the U.S. Marshals Service concerning the rates of infection at both institutions.

Mr. Robinson argues his asthma comorbidity ought to make a difference in my determination. First, while Mr. Robinson noted recovering from a recent ACL surgery and the

taking of medications to combat migraine headaches as current medical conditions to the Court's Pretrial Services Officer, he did not indicate he suffered from asthma. Although Mr. Robinson's counsel endeavored to obtain medical records dating back as far as Mr. Robinson's childhood to document his asthma, he was unsuccessful in doing so due to the passage of time.

To be clear, I do not question Mr. Robinson was previously diagnosed with asthma and may have been treated for that condition in his younger years. But it was certainly not in the front of his mind as a current condition when he was interviewed, leading me to conclude he has been able to function well with that prior diagnosis, and to do so without any current medication.

In reviewing his medical records from the jail, I find no mention of any diagnosis or treatment that seemingly would relate to asthma or related respiratory problems. Accordingly, I conclude that his condition, while previously diagnosed during his childhood, does not preset a sufficient current condition to warrant release based upon the risk of further complications should he be infected with COVID-19.

As noted initially, there is a presumption of detention in this case, and the government has so moved. My review of the proposed release is de novo. Mr. Robinson bears the burden of convincing me that he has presented conditions of release sufficient to warrant his release by overcoming that presumption, notably that those conditions will ensure both his future appearance at court proceedings and the safety of the community.

Mr. Robinson proposes he be released under the supervision of his wife as third-party custodian at their home in Katy, Texas, where she resides with their three minor children. In addition, an interested party has offered a lot of land as surety, suitable for construction of a home, and with great sentimental value.

But Mr. Robinson's conduct as charged in this case is very serious. His role, as alleged, was substantial. The case includes the seizure of approximately 1.5 kilograms of fentanyl, an alarmingly

potent and lethal narcotic. And the strength of the evidence against him is great, as the government proffered that Mr. Robinson was observed by surveillance officers attempting to mail a package containing approximately one kilogram of fentanyl to Houston, Texas, addressed to his wife and proposed custodian, Sabrina Robinson. A subsequent search of Mr. Robinson's motel room yielded another one-half kilogram of fentanyl, in addition to a substantial amount of cash. The risk of conviction, based on the nature and weight of this evidence, is great.

And because of the nature and volume of narcotics, he faces a minimum mandatory sentence of 120 months in prison and a maximum of life imprisonment. At the request of his counsel, a report was prepared to determine his criminal history and probable guideline range. (Doc. No. 43). Based upon that report, his recommended guideline estimate would be 168 to 210 months. Clearly, this significant exposure weighs against him in terms of risk of flight. If he is convicted, I must impose a sentence of at least 120 months, and may well deem it necessary to impose an even higher sentence, given his guideline range estimate and criminal history.

Mr. Robinson falls at criminal history category IV, towards the higher end of the scale. His convictions include offenses involving illegal narcotics convictions and improper possession of a firearm. He has very little history of employment due to spending a significant amount of his adult life incarcerated. In fact, he was released from supervision for a conviction in Texas only about one month before his commission of the acts alleged here.

Relatedly, the conduct as alleged is of serious impact on the community, as trafficking in illegal narcotics presents a danger to those involved any transactions, but also to our greater community, particularly when a drug as potent and lethal as fentanyl is involved.

For the reasons I've discussed above, I have serious concerns about both the safety of the community and the risk of flight. Mr. Robinson has failed to overcome the presumption of detention.

Accordingly, Mr. Robinson's requested release from detention (Doc. 68) is found not well taken and denied.

So Ordered.

s/ Jeffrey J. Helmick<br>United States District Judge